O. T. BRIDGES et al., Appellants, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, June 29, 1908.

1. **RAILROADS: Killing Stock: Fences: Statutory Construction.** Under the rulings of the courts in Missouri a railroad company is not required to fence its tracks where the maintenance of such fences would endanger the lives of the operatives in handling its trains on switches at stations, whether such station is inside or outside a town or village; but such rulings cannot be extended beyond reasonably necessary requirements for the operation of the road.

2. ———: ———: ———: ———: **Stations: Business.** A railroad company is not required to fence at a station where it would interrupt its business, and the word "business" means not only its business with the public but its business with itself in the passing of trains over its road; yet such business must arise from its relation and connection to the station and does not mean such business as merely grows out of the general operation of the railroad.

3. ———: ———: ———: ———: **Danger to Employees: Operator.** While a railroad company is not required to maintain a fence where it would be dangerous to its employees in transacting its business about a station, yet where the necessity for a long passing track arises merely from the general operation of the railroad it should fence the same, and the mere trouble and expense of keeping an additional telegraph operator to convey signals is no sufficient excuse for failure so to do.

Appeal from Cooper Circuit Court.—*Hon. William H. Martin,* Judge.

REVERSED AND REMANDED.

*W. V. Draffen* and *Harlan, Jeffries, Wagner & Corum* for appellant.

(1)    Under the law of this State passing tracks must be fenced.    "But the clear implication from the opinions is that tracks are imperatively required to be fenced whenever a road runs through unenclosed lands, and that loading or passing switches located away from stations must be enclosed as well as other parts of the roads."    Smith v. Railroad, 111 Mo. App. 421.

*Geo. P. B. Jackson* for respondent.

(1)    A railroad company is not required to fence its track at a place where to do so would endanger the lives and persons of its employees engaged in operating its trains; and it has been determined that it should leave unfenced all that portion of the track between the switches and a reasonable distance outside of the switches, to ensure the safety of employees.    Ellis v. Railroad, 89 Mo. App. 241; Hurd v. Chappell, 91 Mo. App. 317; Gilpin v. Railroad, 197 Mo. 319.    (2)    The demands of the railway company, and the public, which require open track at and near stations, is not confined to the mere business done locally at a given station, but such local business is to be considered in conjunction with the general business of operating the railroad. Lloyd v. Railroad, 49 Mo. 199; Swearingen v. Railroad, 64 Mo. 73; Ellis v. Railroad, 89 Mo. App. 241; Hurd v. Chappell, 91 Mo. App. 317; Glasscock v. Railroad, 82 Mo. App. 146; Gilpin v. Railroad, 197 Mo. 319.

ELLISON, J.—Plaintiff had two animals so badly injured by one of defendant's trains as to be worthless. They were afterwards killed.     The trial court rendered judgment for the defendant.     A finding of facts was made, in which, after finding the value of the animals, the court proceeded as follows:

"The court further finds from the evidence that the point of the railroad track of the defendant at which said animals went upon said track was not enclosed by a fence, and was at a point where said railroad track passes through and along unenclosed lands, and that said point was at least 1,700 feet east of the depot of the defendant, located at Clifton City, in Cooper county, Missouri, and not near any other station or depot belonging to defendant; that said point is not within the limits of any incorporated or platted town or village, and not at a point where the track of defendant was crossed by any public or private road, and that said point where said animals went upon said track was 1,600 feet east of the east boundary line of the village of Clifton City.

The court further finds that the defendant's track at the point where said animals entered thereon was not used by the defendant for the reception or discharge of either freight or passengers, nor for the purpose of transacting any business of any kind with the public, other than the passing and switching of its trains.     The court also finds from the evidence that the switch at Clifton City is 3,250 feet long.     The court further finds from the evidence that to fence the track at the point where plaintiff's animals entered thereon would interfere with defendant's business of passing its trains by each other, and to fence the track at said point would endanger the safety of defendant's employees in passing its trains by each other and render it inconvenient for defendant to pass its trains by each other at said station.     The court finds that the only purpose for

which the defendant's track at the point where plaintiff's animals entered thereon is used by the defendant, is for the passing of its trains by each other, and that the track at this point is not used by the defendant for any other purpose, and is not used by the public for any purpose. In other words, the court finds that the length of siding at this station is not necessary for the transaction of the local business of the station, but is necessary for the passing of trains at the station."

The statute (section 1105, Revised Statutes 1899) requires a railway company to inclose its track by erecting and maintaining fences and cattle-guards where the road passes through, along or adjoining inclosed or cultivated fields or uninclosed lands. On this subject generally, see two interesting and able discussions by the St. Louis Court of Appeals. [Duncan v. Railroad, 111 Mo. App. 193; Smith v. Railroad, 111 Mo. App. 410.] In default of a compliance with the statute, the owner may recover double damages for injury to his animals. The courts have held this statute not applicable to cities, towns or villages, first, for the reason that it shows on its face it was intended to apply to lands outside of such places, and second, it would be requiring an unlawful act in requiring that the streets and alleys of towns and villages be fenced. So it is settled that in no event can a railway company be required, nor would it be permitted, to fence up streets. But it frequently happens that there are parts of the town through which the road runs, which are not laid off into streets and therefore to fence the track at such place would not be blocking a street. Still, the railway company need not fence at such place if it be necessary to the transaction of its business with the public that it should be left open. Nor is such a fence required at a station, though it may not be in a town or village.

The courts, themselves, have attached an exemption

from this statutory duty by ruling that it was not meant to require fences and cattle-guards where their maintenance would endanger the lives of the operatives in handling the trains at switches at stations, whether such station be inside or outside the limits of a town or village. [Gilpin v. Railroad, 197 Mo. 319; Pearson v. Railroad, 33 Mo. App. 543.]

A railroad not being required to fence at a station where it transacts business with the public when such fencing would interrupt such business, the question has been presented whether the word "business" means the road's business with the public, such as receiving and delivering freight, or whether it includes the road's business with itself, such as the passing of trains. Expressions have been used which have been interpreted so as to have the courts to say that the business which will excuse the road from fencing is the business of the *public* at that particular depot or station. The cases of Russell v. Railroad, 26 Mo. App. 368; Chouteau v. Railroad, 28 Mo. App. 556, and Morris v. Railroad, 58 Mo. 78, are cited as sustaining such view. In the case last cited it is held that the road should not be required to fence such grounds as are necessary "to remain open for the use of the public *and the necessary transaction of business at the depot or station.*" That expression does not justify the conclusion that the court meant only the public's business; on the contrary, it means in addition any proper business of the road at that station which is connected with the operation of the road at the station. And it means to excuse a road from fencing when to fence would endanger the lives of the employees in operating the road generally at that station. That case is cited to sustain such meaning in Gilpin v. Railroad, 197 Mo. 319, and Railroad v. Clark, 121 Mo. 169, 183. In the latter case it is said the fencing law will not apply "where it will

Bridges v. Railroad.

interfere with the use of the public *or operation of the road."*

Therefore, while we hold that the business to be considered is the company's business with its patrons— the public generally—*and also* its business, so to speak, with itself, yet it must be such business as is connected with the station. The railway company will be exempt from the requirement to fence within the limits of cities, towns and villages where there are laid-out streets; and it will be exempt from fencing at stations outside of towns and villages to the extent of permitting it safely to transact business with the public at that station and to operate its own business connected with that station. The maintenance of a passing track merely, does not have any necessary connection with a station. It belongs to the general operation of the road and the Legislature has not intended that it may go unfenced when it lies outside the limits of cities, towns or villages, or outside the necessary station grounds of stations which are not located in towns or villages. It is true that that portion of a passing track which may be within the limits herein referred to, would go unfenced as an incident to its lying along with switches and tracks not required to be fenced as herein stated. But when, as here, it goes beyond such limits, the statute applies and it should be fenced.

In this case, as shown in the court's finding of facts, the passing track in controversy is 3,250 feet long and extends 1,600 feet, or nearly one-third of a mile, beyond the village limits. It further appears that it was not needed for the business connected with the station and that it runs along uninclosed lands. That portion (1,600 feet) thus lying outside the limits should have been fenced. If a switch is not needed at a station for the public's or the company's business at such station, its location there does not aid the company in defending against its duty to fence.

But the trial court found that even that part of the switch outside the village limits could not have been fenced without endangering the life and limb of the defendant's servants; and that, no doubt, was one of the chief grounds for its decision of the case in defendant's favor.     But in this case the evidence showed that there was no necessity for maintaining this passing switch at this station for any business connected with the station, especially extending as it does 1,600 feet outside the village limits.     It was shown that such a switch, for such purpose, could be built wholly on the inside of fences away from towns or villages or stations, and that such places would be wholly free from the objection of endangering employees in their work.     The objection, however, to this phase of the case, as testified to at the trial was that while that could be done, it would make necessary for employees to stop trains at such passing track and walk to the nearest station for telegraphic orders.     That, it was said, would be a great inconvenience, if not impracticable, even though a station was nearby.     But when witnesses for defendant were questioned by plaintiff's counsel, they stated that a telegraph office could be maintained at such passing track on inside of fences and thus avoid the inconvenience just suggested; but that it would involve trouble and expense of an operator.     We do not think that a sufficient excuse.     The want of fences at points near and outside of small stations and villages is a greater inconvenience to the people owning stock in the vicinity than is the keeping a telegraph operator at passing tracks which could be fenced outside of stations.     The exception permitting switches to remain unfenced when such fencing would endanger the lives of employees, having been engrafted upon the statute by the courts, to the end that it might receive a reasonable construction, should not be extended beyond reasonably necessary requirements for the

operation of the railroad.    And when, as was made to appear here, the switch claimed to be exempt from fencing could reasonably be placed at a point where it would be wholly within the railway fences, the railway has no right to claim privilege of having it at a station or village where it extends at great distances beyond such station, thereby leaving unfenced tracts of land which would otherwise be enclosed.    By such view of the law we still give force and effect to the case of Morris v. Railroad, 58 Mo. 78, which requires the fencing of switches outside of villages, towns and cities, and yet at the same time we recognize the exception just referred to as exempting the road from fencing where it would endanger employees.

Some of the evidence from railway experts in defendant's behalf has impressed us with the soundness of the foregoing view.    They testified that in view of increased length of trains and increased power of engines, passing track switches were now being built and extended to four thousand feet or more in length. When these can be put within the enclosures which the law requires railroads to maintain, it should be done; and the mere inconvenience in the way of extra expense of a telegraph operator to receive and give orders should not stand in the way.    The necessity upon the other hand is too great to allow that to be a reasonable excuse.

The judgment is reversed and the cause remanded. All concur.